All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Good morning again. On behalf of the Fourth Circuit, we are very pleased to be here this morning at the Liberty University School of Law. We thank Dean Tan and his staff for their hospitality and I look forward to the arguments this morning. We have three cases on the docket. The first case is 22-4680, United States v. Bowman. Mr. Thorpe, I hope I got that right, sir, whenever you're ready. Good morning. Good morning. May it please the Court. I am here on behalf of Mr. Bowman, who has filed an appeal from his convictions and sentence based on three issues. I'd like to address first the issue of the District Court taking away from Mr. Bowman his Sixth Amendment right to a fair and impartial jury. The government and I, we differ on what the standard is for this Court to apply and I And that was not affected by the Supreme Court in Rivera. In Rivera, you had a voluminous voir dire process so that the Supreme Court could determine that there was no juror seated who would have been excused for cause. Here, we simply don't know whether there were jurors seated who should have been excused for cause based on racial prejudice. Well, there was a voir dire process, right? There was, Judge. How do you gauge whether or not it's voluminous or sufficient enough to conclude that the jury that was actually seated was impartial? Well, Judge, here, we had an all-white jury and a black defendant and the trial court at no time plumbed the issue of racial bias. There was no voir dire question that asked the jurors whether they harbored any racial bias that might have affected their ability to render an impartial verdict. Haven't we said or held that unless race is a part of the case itself, that generally a district court doesn't abuse its discretion by not asking questions related to race? Well, Judge, the Supreme Court in Rosaliz v. Lopez made clear that that decision should be deferred to the defendant. If the defendant would like to inject that, the Supreme Court said that a district court should defer to that. In every case? Well, not in every case, Judge, but here, I think we have to be aware of the reality. Wait a minute. You just said the Supreme Court said it should be the defendant's choice. I don't read the case that way. Help me understand why you believe that that's something that must be done in every case. I don't believe it should be done in every case, Judge, but I believe that in this case, the case that we have, where you have an all-white jury and a black defendant with drug charges, where the defendant wants to ask the jurors, the venere, whether they have any issues with stereotypes, whether they have issues with interracial marriage, he is trying to plumb the issue of racial bias. Now, if the district court had asked the question, as the court did in Tipton, a case cited by the government, of is there any reason, racial or otherwise, that you might have prejudice that would affect your ability to render a partial verdict, well, then my argument, I would contend, would not be very cogent. But here, the district court never plumbed the issue of constitutionally significant bias. What's your best case for the proposition that if a district court fails to do that in a case like this, that that's reversible error? That's Rick's, Judge. And when you look at Rick's, the government pointed out that we had a panel opinion in per se, but the en banc opinion did not use the words per se. But I would point out that in Rick's, in the en banc opinion, the en banc court said, we too make the same rulings for the reasons advanced by the majority. They explicitly endorsed the reversible per se standard. But Rick's relied entirely on Swain for that, didn't it? Yes, Judge, it did cite to Swain. But when you look at Rivera, Rivera, while it did diminish the holding in Swain. Rick, the court says it disavows that statement from Swain. Pretty strong. Yes, Judge, but when you look at the holding in Rivera, where they make clear that it's not always constitutionally significant if you have the ability from the record to establish that no juror was seated who would have been excused for cause. And in Rivera, the facts were very different because you had two days of voir dire. You had extensive ability to test issues of bias. And here we simply don't have that. So I don't believe that when you read Rivera in this context, that it would support the panel abrogating the decision en banc in Rick's. So help us understand what the rule you would have us write. You would say what? That in a case where there's some voir dire, but not enough voir dire, it's per se reversible? I mean, what's the rule? Help us understand what the rule you're saying. Or is it any time there's an objection about the scope of voir dire? Judge, what I would contend is that when you have a case where there is an issue of race, whether it is raised by the defendant or it's sua sponte by the court, the court has an obligation to ensure that there is no racial bias that would affect your rule. But only it's only per se reversible error in race related cases. So any other case Rivera applies and it's not per se reversible. It is reversible where there's an issue of race and by an issue of race. You just mean the defendant is of one race of any race? Judge, no, I would say it's of any issue of constitutional significance. It could be religion. It could be sex. It could be race. I think in any protected class. So any time the defendant is a member of a protected class. Well, I'm not importing Title seven here. I'm talking about constitutionally significant issues and under the Constitution. You know, we have under the Bill of Rights, there are certain classes that are more protected than others. For example, the issue of race and religion. When you have those issues. And whether they come up to clarify, you don't mean you have those issues in the case that has nothing to do with the merits of the case. You're saying when you have those issues and I thought your earlier argument was that's an issue because. The defendant is one race and the jury is all a different race. So you would apply that to religion also. The defendant's one religion, no juror of that religion. But the case has nothing to do with religion. The judge still has to ask the questions. Judge, the way I would answer your question is this way. If it was religion, if it was a Muslim defendant in a in front of a jury with no Muslim members and it was a charge of aiding and abetting terrorism. But that's that's you're making that a part of the merits of the case. Well, judge, you're right. I let me withdraw that. But if you have a Muslim defendant in front of a jury with no Muslim members. And there is the risk of us of stereotyping the defendant to have behaved in a particular way. And I believe you're gauging that risk simply by the fact that. What you just described, the Muslim defendant and a jury was where every member is not Muslim. That's enough. Well, if the defendant judge wants to make wants to verify that he or she is going to have an impartial jury judging his or her faith. And that's what we have here. If Mr. Bowman had never proposed to plumb this issue, then I don't believe reversible error per se would apply. Because there was never any doubt. In your view, why would it matter that it was none instead of one? Let's imagine that the panel here had one black member. Why, for our purposes of a per se reversible error, why would that matter if we thought we had 11, in your view, sort of racist jurors and we had one that was black? Why would that change the per se rule? You're suggesting that what we have is a structural error, right? What the court has said almost never exists. You're asking us to create a structural error in this particular factual circumstance. But I can't exactly understand how that's different from the run-of-the-mill case, where there's a majority of one race versus a minority of another. Judge, I'm not impugning the character of the entire urban area in the Western District. What I'm saying is we just don't know. And that's what matters. But to address your question. Right. We just don't know. But that's what the court seems to tell us means that you haven't shown any prejudice or any harm. I don't believe that Rivera stands for that, Judge, because when Rivera says, when it relies on the fact that there was this voluminous voir dire such that they could establish that there was no juror seated who would not have been excused for cause. But here, we don't have that because we do not know. Your point being in Rivera, you think that the court made an affirmative finding that the government has proven that every juror that was seated was fair and impartial. They affirmatively proved that as opposed to the inverse, which is that the defendant has failed to prove that any member was unfair or impartial. Well, Judge, but here, when you're denied the ability to plumb those issues on. I know, but you're saying that Rivera made the affirmative finding. Your claim is that in Rivera, the court made the affirmative finding that the government established that every member of that jury was fair and impartial. Well, the language. I don't read it that way, but I just want to say if that's your position. Judge, my position is that Rivera in making the ruling it did, it relied on the fact that it could determine that there was no juror seated who would not have been excused for cause. And I cite that in the opening brief. Jurors weren't challenged for cause. It was about peremptory. Judge, but I agree, but because the. Judge Richardson's point is that the court could say that because no one challenged these jurors for cause, not because the court that we have to make the affirmative finding and go through each juror and determine that, in fact, they were, you know, pure vessels that had no stain of cause on them. Right. It was because the defendant hadn't made when there hadn't been the challenge. Yes, Judge. My point is simply that I think when you look at the factual predicate of Rivera, the fact that you the defendant had the ability to make those challenges if he chose because the voir dire had plumbed the issue of prejudice, whereas here with Mr. Bowman, he had no such opportunity because he was not only he was he denied his voir dire questions, the judge rejected them, but the judge then did not. Excuse me, then did not frame a question to plumb that issue. If you look at the recitation that the government puts in its brief, and it's in, of course, the transcript, the court never addressed this issue of racial bias, never asked the question of prejudice at all. Is there any prejudice that you have to the veneering that would make it impossible for you to render a fair and impartial verdict? Never asked that question. And that's why I believe this fits in the reversible per se, very narrow, reversible per se standard that Rivera did not. Do you agree that if it's not reversible per se that you lose on this argument? Yes, Judge, because we'd have the plain error then would apply. And I agree we would we would then. Can you talk just a second about the jury list? Sort of a separate question than the jury questioning. Is that just part of this argument? Are you making a standalone argument about the jury list? That's part of the the other argument, Judge, because it goes to the issue of Rivera where he was denied any sort of part and parcel of these. I mean, what I'm just making sure is I understood you to be making effectively one argument. There are two pieces of evidence that sort of supporting this more than these are sort of separate standalone. That's correct. It's part of the same. If there are no further questions on the jury issue, I would just like to point briefly to the suppression issue here. We had a pro se defendant and. The Supreme Court has made quite clear in Erickson that you have to give some leeway to a pro se defendant in filing motions. The motion to suppress that he was permitted to file out of time by the was certainly not a paragon of legal analysis and argument, but nevertheless, it adequately raised for purposes of a pro se defendant the issue of whether his statements were voluntary. The government counters that, well, since Snedeker in his affidavit used magic words of spontaneously uttered, that ends the question. Well, that shouldn't end the question. There was no factual analysis done because the district court denied the hearing, which prevented Mr. Bowman from testifying. Obviously, he could have testified at the suppression hearing without the risk that would have happened if he testified at trial. And he was denied that opportunity. And further, he didn't even know that the district court had ruled. The district court's order on July 1st, a Friday, was never served upon him. He comes to trial on July 5th. He asks, when is my motion going to be heard? And he shut down because he didn't know there had been a ruling. The government at trial was quite aggressive in making sure that Mr. Bowman did not have the chance to litigate issues of invisibility of evidence from the suppression. I'm sorry. Go ahead. Did his motion contest any of the facts that the officer presented? Because that's the question for the motion. Are there disputed facts I need to resolve here? No, judging that, they both contend he was not merandized when he made the statements. And if he had been represented by counsel, I think it would be absolutely appropriate to conclude the motion was insufficient to warrant a hearing. But I believe that when you look at Erickson and its interpretation in criminal law cases, the district court has to give him the benefit of the doubt. And it simply did not do that. And he never had the opportunity to test through evidence. I mean, his motion, you know, said I wasn't merandized and therefore my statement shouldn't be put in evidence. And the judge considered that and gave him the benefit of the doubt on that, we can assume, but concluded that as a legal matter, that didn't keep it out of evidence. Now that the judge can't then just hypothesize other facts that the defendant might come up with other disputes, the defendant might have made if he didn't include them in his motion. I see I've gone over time, but may I answer that question? Thank you, Judge. That's correct. Absolutely. He did not articulate those arguments. And I quote a Sixth Circuit case, which the name I forget, it's in my brief, where they talk about how the defendant did not invoke the Sixth Amendment. He did not invoke the legal theories, theories that would support his motion. And again, I believe the issue before the panel is simply, when you have a pro se defendant, what is the standard to which he or she is held? And he challenged the fact that the statements were made without the benefit of Miranda warning. And he did not articulate the legal issues of was it a voluntary or involuntary statement. But I believe that with a pro se defendant under Erickson v. Paulus, he should have been given the opportunity to develop that through evidence out of here. And I hate to beat a dead horse, but you just, I think you just, in response to Judge Brushing's question, you focused on the legal issues. And if all we're talking about are legal issues, why would a hearing have been necessary? And I'm sorry, Judge, if I misunderstood your question. Are you asking me to address the factual issues? Well, you said this is a question of a legal issue with respect to Miranda, that he hadn't been properly Mirandized. That's a legal question. So what was, what would have been the point of a hearing? Oh, I'm sorry, Judge, I was inarticulate. What I meant to say was with the, it's an extremely fact-based determination whether a statement was involuntary, whether it was custodial under Hashimi. And that's what the hearing would have been able to develop, even though Mr. Bowman admittedly did not articulate the facts upon which he would have sought suppression on the issue of an involuntary statement. All right. Thank you, Counsel. Mr. Jones? Good morning, and may it please the Court. My name is Jonathan Jones, and I am here on behalf of the United States. Your Honors, I'd like to begin with the questions related to the jury that the panel was discussing with my colleague, and then talk a little bit about the suppression issue as well. And I'm happy to answer any additional questions that the panel has. So initially, we have a question about what the standard is that applies, whether it's per se reversible or whether it is the typical harmless error review. And I think it's pretty clear following Rivera that we are no longer in a state of per se reversal, such that this would be construed as the kind of structural error. And I think that's particularly clear when we look at the Supreme Court has done post-Rivera in cases like Greer, where it is made clear that the situations of structural error that require per se reversal are very, very narrow. And when we look at Rick's, both the panel opinion and the en banc opinion, we see it's only the panel opinion that uses the term per se reversal, and then that's removed for purposes of the en banc opinion. So I think that's significant in determining what the standard is that they took that out when issuing the en banc opinion. And the fact that in Rivera, in a case involving the denial of a peremptory strike, the court said that that is not the sort of structural error that would cause us to review this on a per se reversal standard. So your colleague's response to that is, is that's fine in the normal case, but in a case where the defendant is a black man and the panel is white, we simply can't know without questions being asked. And where we can't know, that's what requires this sort of structural per se error. So I have three responses to that, Your Honor. First, in Barber, this court made very clear that there is not an obligation to ask questions about racial bias where it is not presented in the facts or the elements of the case, or where there is not a reasonable probability that's going to impact proceedings. So from the get go, and that's an en banc opinion from this court, it's clear that there is no obligation to ask race-based questions. Second, I would point out that there's a presumption that jurors are impartial. So we don't go into this sort of flipped and wonder if we have enough evidence to think that they're impartial. We have a presumption that they are impartial, and then we look at what we know to see if there was a basis for a four cause challenge. And that's how Rivera looks at this. So there was no four cause challenge. There was nobody that was subject to a four cause challenge. And so they can confidently conclude that there was nobody sitting on the panel, on the jury, that could have been excused for cause such that the defendant didn't have a fair and impartial jury. How could the defendant here have had the knowledge to exercise a challenge? Your friend on the other side points out his questions weren't asked. Now the judge did ask different questions, but also the defendant didn't know anything about the panel members because of this list issue, right? The government, it appears that you say in your briefs that the potential jurors had more information about these potential jurors than the defendant had. That's correct, Your Honor. So there's a couple of points I want to make in response to that. First, so my colleague has suggested that there was not sort of a very ample voir dire process here, and I would disagree with that. We have a number of questions that were posed to the jurors that Mr. Bowman would have heard. He could have made notes. He could have listened to that. He could have made decisions based on that. They were asked about their connections to law enforcement, connections to members of the case, connections to drug cases, whether they've been victims of violent crime. And at the end, there's sort of a series of large catch-all questions that I think arguably could have included issues of racial bias. He asked if they have past experiences that would have kept them from being impartial. He asked if they could follow the evidence and decide without regard to bias or prejudice. He asked if they have personal beliefs that would cause them not to cast judgment on somebody else. And he asked if there's any reason that they could not be fair or impartial. So there was ample opportunity for the jurors to disclose the sort of biases that he was trying to plumb by virtue of these race-based questions. Now, and I acknowledge in terms of the list, so the government received a list beforehand that had some additional information that was not on the list ultimately given to Mr. Bowman. Is that the list at JA 802 to 811? I didn't see anyone come out and explicitly say that, but that's the list with more information. That's correct, Your Honor. That's what the government has. That's what the government received in advance of trial. As a typical practice in our district, both sides will receive that. In this case, because Mr. Bowman was incarcerated, that list was not disclosed within the jail. And so what he would have received is what's in the supplement. Can you help me understand how that works? Obviously, I have not tried cases in the Western District, but is there a juror questionnaire as well? That will vary sort of on a case-by-case basis and a judge-by-judge basis. So there are some situations where there have been jury questionnaires and some are there. But not in every case, there's not a jury questionnaire. To the best of my understanding, there is not a jury questionnaire in every single case. And in this particular case, Mr. Bowman's case, was there other information from the jurors that's not on the list at 802? No, Your Honor. So the entirety of what the government had was that list that said JA802. They received that in advance of trial, and then that's what they would... So this is some... I'm just trying to understand how it works. So when they sign up or register, they fill out some limited information and that information is what shows up on the list at 802? To be candid, Your Honor, I am not sure where the information on that jury questionnaire list comes from, but that is what is compiled and provided to our office in advance of the trial. And in this case, in Mr. Bowman's case, this would have been all the information that you received from the court about these jurors? That's correct, Your Honor. So that's what government had. And I will candidly acknowledge there's additional information on that list than what is on the juror list. There's information about the number of children, about spouse's occupation, about level of education, about year of birth. But at the same time, I would disagree that the absence of the fact that Mr. Bowman didn't know that information in advance, that precluded him from either making intelligent or... Well, he didn't know the information at all, right? He was never given the list even at the trial. Your Honor, I think if we look at the record here, the court indicates that it's giving a list to both sides. That was the trial list. I'm sorry? That was the trial list. That's correct, Your Honor. So he never received that list that the government received in advance. But the list that the government received in advance was a little bit more comprehensive than the trial list. That's correct, Your Honor. That imbalance was never corrected, right? That's correct, Your Honor. He never received it absent the extent to which the information that was on the government's list was otherwise disclosed in response to a variety of questions. He would not have known that. So for example, he likely didn't know the number of children that the jurors had or the level of education of their spouse because that might be... So why isn't that the kind of structural problem that we just can't gauge as a prejudice? Because, Your Honor, the underlying question they were asking is whether that precluded him from having a fair and impartial jury. That's the sort of prejudice that we're looking for to see if there's a constitutional Sixth Amendment problem and then we would turn to look whether there's harmless error. So in this case, the fact that he didn't know the jurors, the occupation of their spouses, their specific level of education, but he did know, for example, whether they had connections to law enforcement, whether they had experiences in the past where they were victims of drug use or had family members that were victims of drug use, whether they knew that the jurors had not indicated any sort of bias or prejudice in response to those catch-all questions. The fact that he knew all of that but didn't know sort of this other limited set of information, I don't think precluded him from identifying who he could raise a forecast challenge for. And so as a result, we don't have a reason to believe that... Well, there's that and there's also the ability to be able to frame questions that you could submit to the court to ask the jurors, right? And the government had this additional information, and I don't recall whether or not the questions that were asked by the government were framed in a way that suggested their use of that information, but the defendant couldn't do that, right? Couldn't ask those questions because he didn't have that information. That's correct, your honor. And again, I don't dispute that there was sort of an imbalance of information between what the government had and what the defendant had. But I think for purposes of analyzing this question, the underlying issue was whether there was something that impeded or impaired his ability to have a fair and impartial jury. Is there any constitutional problem with an imbalance? So imagine the scenario where, you know, happens at least in some instances where the government has significantly more information about the jury panel. Maybe it's not provided by the judge as it was here or by the court as it was here, but the government often has more information. They could run rap sheets, they could do social media searches, they can do lots of different things to investigate jurors that maybe defendants don't have. Has any federal court ever held that that imbalance raises a constitutional concern? The short answer to your honor's question is no. And there's a number of from the Fourth Circuit, but in this idea of running, for example, background checks on jurors in advance of trial. There's a 1970 case out of the Second Circuit, a 1959 case out of the First Circuit, a 1950 case out of the Fifth Circuit that deals specifically with this issue and this idea that there's an imbalance between what the defendant knows and what the government knows. You know, that's fair, but, you know, I think, I don't remember all the cases that you just cited, but I would suspect that the imbalance in those situations was as a result of the party's diligence in, you know, uncovering that information. The government has access to resources, and so all of that is fine, but this is different. I mean, this is the court sort of tilting the scale in front of, in favor of one party, whether intentionally or not, giving one party much more information than the other. Don't you think that's problematic? And your honor, I'll note, I'm happy to provide the names and insights for those cases. It did be helpful. To answer your question, your honor, I don't think that it is constitutionally problematic. And again, the reason that I question is whether he received a fair trial by a fair and impartial jury. So the question we are looking at is whether this imbalance of information, whether it was because of the party's diligence, information the parties happened to know if they had seen this juror before, or information that was provided by the court, whatever the basis is for that imbalance, the question is, did it prevent, in this case, Mr. Bowman from having a fair and impartial jury? Your point there is this shouldn't happen. It's bad, but it's not a constitutional problem. Nobody thinks it's a good idea to give the government one list and the defendant a less inclusive list, but that doesn't mean that it's a constitutional problem. Yes, your honor. I think that's a fair characterization of what I'm saying. There's certainly a more ideal way to do this where both sides get the same information. And as I noted, that's typically what happens in our district. This is unique because it was a provide the home addresses of the jurors inside the jail. But there's no reason why you wouldn't want to provide it, at least on the day of the trial. I agree, your honor. I don't disagree that there are other ways that the court could have done this. They could have provided the list to neither party. They could have found an alternative way to give it to Mr. Bowman. I don't disagree that that's a reasonable way to look at this, and that's something the district court could have done here. But the question that we're looking at, especially in terms of whether it's a constitutional problem, is whether this prevented Mr. Bowman from having a fair and impartial jury. So this court in Schnabel very clearly identified the standard and said, looking at whether whatever the court did for purposes of voir dire, impaired the ability to have a fair and impartial jury, and whether it impaired it to such an extent that it was an abuse of discretion. So that's the hook that we're looking at. Is this something that prevented him from having a fair and impartial jury? We don't have any evidence that any of these jurors would have been subject to four constitutional challenges. Can you say it's an abuse of discretion? Obviously, Mr. Bowman was, even though he was pro se, he did raise the issue, right? He somehow managed to see that the government had the list or some list that was different than his. And so it seemed to me that the district court, and this is a very able district court judge, and maybe he was just frustrated by the nature of Mr. Bowman's persistence and the way he handled himself in court. But I don't think the district court ever engaged with his argument, kind of simply ignored it. Are you referring to the argument about- His complaint that he didn't have the same access to the information, the district court just kind of moved on, didn't say anything. Your Honor, I agree. There's nothing in the transcripts that indicates that the court had anything particular to say about that imbalance of information. So, I mean, when you say he didn't abuse his discretion, discretion implies some understanding of what the law is and some understanding of what the facts are. And how does a court act well within its discretion by simply ignoring a legitimate concern raised by a party in the case? Your Honor, the answer to that in this case is because when we're looking at whether he abused his discretion, it's whether he did something so severe as to impair the defendant's ability to have a fair and impartial jury. And so, again, we come back to this question as to whether the denial of this information, however it happened, actually precluded and prevented Mr. Bowman from identifying potentially biased or prejudiced jurors, whether there were people on his pedigree that could have been subject to forecast challenges. And there's no evidence in the record to suggest that there was. And so, as a result of that- Let me ask this question. So, imagine like a slightly different case than what we have, instead of this very limited information, which was the list that was provided the government, but not the defendant, there were actually jury questionnaires that included much more information. Might in a case like that, it create such a constitutional problem, right? I mean, one of the, I guess what I'm trying to get at is, is there a point where that information might look different? This is very limited information. It's hard to imagine why their address or the education of their spouse, like tells us really anything about whether they're going to be a very good juror. But you might have a questionnaire that the government had that the defendant did not have. Is there some point in which it would become constitutionally significant or is your position, that's another reason to think this, but even that would not raise constitutional concerns? I think that there are situations where that could become a constitutional problem. I don't know exactly, I can't draw a particularly hard line for you on that, but you can imagine hypotheticals where there's a questionnaire and there are very specific questions and answers that identify bias and prejudice and that information is not disclosed to somebody. So maybe a juror that wrote on a questionnaire, I'm racist and I'm going to convict black people. And if the government had that questionnaire and the defendant had not been provided it, we wouldn't have a ton of trouble figuring out that that was a constitutional problem. Yes, your honor. I think you can look at that and very easily. If that juror ended up on the panel. Yeah, I think that's correct, your honor. I think if you look at that situation, you could say the absence of that information for the defendant precluded him from identifying a potentially biased juror and led to him not having a fair and impartial jury. It impaired his ability to have a fair and impartial jury. And so part of, maybe it's a fallback for you, but a part of the argument here is that the information, really the shockingly minimal information that you had to make jury selection was really like not a whole lot less or not a whole lot more than what the defendant also had. I think that's right, your honor. And I think it's the character and quality of the information that really indicates that this is not a constitutional problem. Had Mr. Bowman known some of these additional facts, there's not a reason to believe that he would have been able to carry out bias and prejudice that otherwise would have been unnoticed. And so in that case, what we're looking at is a situation where the court may have done something that the panel may disagree with, that others may disagree with, but did not actually impair his ability to have a fair and impartial jury. And in that situation, it's not an abuse of discretion and it's not a constitutional problem. Unless there are additional questions related to the jurors. Can I just add one question? Yes, your honor. The report at JA-12 indicates a standing order 2015-8 that prohibits a defendant from having a copy of this report while in custody. Is that standing order still in effect? And do you know anything about that standing order? It's not an uncommon idea of not allowing personal information into prisons, but is that order still in effect or do you know anything about it? Your honor, my understanding is that that order is still in effect. I'm not aware of any changes that have been made to that order. I apologize. I don't have any additional information or context with respect to that order. I'm happy to provide that in the subpoena filing if that would help. Moving briefly to the suppression issue, and I think the panel has asked some questions that really key on what I think is the primary issue here, is that in Mr. Bowman's filing, in the statements that he made, there was not a point where he put a fact of legal consequence into dispute. And that's what is necessary for a hearing. So we rely on the Griffin case, which admittedly is an unpublished case from this court, but I'm not aware of a published case where this court has set out the standards for when a hearing is required or when a hearing is not required. I apologize. But without a specific fact that needs to be found, there's no need for credibility determination. There's no need for fact finding. There's no need for the court to hold a hearing. And so in this situation, the fact that Mr. Bowman simply says, hey, if you look at that criminal complaint, it says that this happened before Miranda, that's a constitutional violation. From the government's perspective, what do you think the standard should be? So what should a district court have to ask in deciding whether a motion, a criminal, in a criminal case of suppression motion requires a hearing or not? Judge Rushing suggested earlier sort of a summary judgment style question of are there disputed facts? But what does the government think the standard ought to be? Your Honor, I think the standard that's set forth in Griffin is what it similar to the standard that Judge Rushing set forth as to whether there are disputed facts. Griffin says there needs to be specific, definite, detailed and non-conjectural allegations establishing contested issues of fact. So what you would need is very specific statements about factual differences that will matter to the underlying resolution of the legal issue. And when you have that, then you need to have a hearing to resolve those facts. So later, not in the made the suggestion or maybe said outright that he had asked for a lawyer. If he had done that in the motion, would that have required a hearing? Your Honor, I don't think that it would, because that goes to his statements that he also denied saying anything to the officers. But he was there, right? And so he has firsthand knowledge of what occurred. And if he said, I asked for a lawyer and they kept questioning me, wouldn't that create the disputed fact right now? He's he's now put forward a fact which he has personal knowledge of, and it is contrary to the facts as as alleged by the government. Your Honor, if he had said I asked for a lawyer and they kept questioning me, yes, he would have put a relevant fact at issue. But he didn't say that. He said I asked for a lawyer and I never said anything. If he had asked for a lawyer and then spontaneously made a statement, that would not have been a Fifth Amendment violation. He has to be under interrogation for there to be a Fifth Amendment problem. So if he's not being asked a question, then there's not a problem. So the issue again here is that the facts that he that he says, both in his motion. But here we know that we know the facts from the government is at least as alleged by the government as he made these spontaneous statements. And then he was interrogated. Right. He was given Miranda and was then interrogated. That's correct. So if he said, no, no, no, I'd ask for a lawyer. We know he's subsequently interrogated, right, because that's what the what the agent testifies to. So it seems like to me just saying like I asked for a lawyer when they say I was doing this, I asked for a lawyer that would have created he didn't do it here. I acknowledge that. But had he done so, would that have been sufficient? It may have. There may have been enough there to require a fact finding. I will know to be asked for a lawyer and then is Miranda eyes and agrees to speak after being Miranda eyes where he advised that he can ask for a lawyer and doesn't have to speak. Then I think it would be appropriate for the government to interrogate him at that point and there would no longer be a Fifth Amendment problem. But you would want to know, I think, a sufficient amount of facts around that situation to make that determination. I will note that he doesn't say that he asked for a lawyer in his motion. What he says is that what's said in the criminal criminal complaint is a constitutional violation. So this those two statements need to be expressed. And I also know even if we if we move past the question of error and look at the harmless error point here and I see my time has removing those two statements doesn't really change the calculus that was before the jury here. There was an abundant evidence against Mr Bowman. And as a result, I think it's appropriate for the court to to affirm here. Absent any additional questions, I will rest on my brief. Thank you, Mr. John. Thank you, Your Honors. Or you have some rebuttal. A couple of points raised by my colleague when Barbara says reasonable probability to impact the proceedings. I just think it's naive to say that in a drug prosecution of a black man in front of an all white jury, you cannot you can say as a matter of law here that there was no reasonable probability that race might impact the proceedings. I just think that's a naive view on the juror list. I think it's important to be clear. Mr. Bowman was never given any kind of jury list. The record is clear. The clerk had the jury list for selection of the jury, one such document, and hands it to the government so the government can exercise its strikes. That jury list is then given to Mr. Bowman so he can exercise his strikes. In the record, Mr. Bowman says, oh, they get a list that figures, indicating that he'd never seen the list until voir dire was questioned. It's a harmless error, not a plain error issue on the jury issue I just spoke in my opening remarks. On the suppression issue, I will say this. Griffin and none of the cases cited by the government dealt with a pro se defendant. The government cited no case in which court denied suppression motion for a pro se defendant. It cited to the Roane case. In Roane, as I pointed out in the reply brief, the documentary shows quite clearly the court announced it would not have a hearing if, after reviewing the briefs, decided one was not necessary. Mr. Bowman never got that type of notice. I also noticed that the government, in opposing the suppression motion by Mr. Bowman, never raised an argument that he had failed to articulate facts that required a hearing. The only objection the government raised to Mr. Bowman's suppression motion was of timeliness. It never raised the issue that he had failed to enunciate sufficient facts. I will touch very briefly on Ms. Carr, the constitutional issue of her Fifth Amendment invocation. It's raised in the briefs. I believe the government is wrong in trying to impose a contractual analysis on a Fifth Amendment waiver. That is not the law. Mr. Bowman is not appearing, is not advancing an argument of third-party beneficiary of a plea agreement. She waived it. Once she's waived it, it's gone. And he had the right, under the Sixth Amendment, to call witnesses in his defense. And he had proffered, when he had asked the court to give him subpoena power to get the text messages, he had proffered what she would say, that she was doing her own thing and the drugs were hers. So that proffer had been made. The plea agreement, and he did not need to do anything further under Rule 51 to preserve that error for the court's review. Based on the argument in the briefs, we would ask that the court vacate the convictions and sentence and remand for a new trial. Thank you, Mr. Thorpe. I note that you are court-appointed. On behalf of the court, I want to thank you for taking on this case and as you've done ably here today. We could not do the work that we do without lawyers who are willing to take on these cases, so thank you very much for that. We really appreciate it. We appreciate the argument of both counselors. The case was ably argued. We're going to take a short recess, come down, greet counsel, and take a brief break before moving on to our next two cases. Thank you, Judge Thorpe.
judges: Albert Diaz, Julius N. Richardson, Allison J. Rushing